21-1448 StreetMediaGroup v. Stockinger Mr. Messenger, when you're ready. I'm totally okay with controlling the clock. May it please the court, Todd Messenger, Fairfield & Woods PC for Plaintiff Appellant, StreetMediaGroup and Turnpike Media, LLC, which we will refer to for consistency with the pleadings collectively as StreetMedia. Your Honors, Mr. Nelson, when the First Amendment is involved, a searching inquiry is appropriate. As this court held inactive, the role of the court is to prevent forbidden intrusions onto the field of free expression. The law at issue here has impacts on all Coloradans, and in particular, those sign owners along thousands of miles of federally funded highways in this state. In short, this case on de novo review demands a hard look. The complaint includes sufficient factual allegations to assert First Amendment violations with regard to the act and the rules in terms of prior restraint, in terms of failure to satisfy strict scrutiny or intermediate scrutiny, and also in terms of vagueness under the First Amendment and the 14th Amendment. The district court was obligated to view the extensive factual allegations in the complaint in the light most favorable to the non-moving party. It failed to do so, and as such, this court should reverse and remand for a full and fair hearing on the merits. In prior restraint cases, the government has a heavy burden of proving that its prior restraint satisfies, that it doesn't allow for too much discretion, and that an official could arbitrarily and discriminatorily enforce the law. Walk me through, pardon my interruption, but walk me through how we distinguish City of Austin to this case. I'm trying to imagine if we go your way, but we're going to have to write an opinion that withstands a cert request to the Supreme Court. So give me your best shot on how to walk through distinguishing Austin. Sure. The City of Austin case addressed the narrow point of whether a content-neutral, facially agnostic, locational requirement of on-premise speech or off-premise speech was facially content-neutral. The court held that it was, citing 50-plus years of precedent of government regulating in a content-agnostic way, on-premise versus off-premise speech, and sent it back down to the district court to try to figure out whether there was some other motive or some animus towards the speech, which might make it either content-based in that sense, or whether it satisfies intermediate scrutiny moving forward. The case didn't end with, this law is okay, you know, we affirm or we reverse and decide the case. Austin didn't address issues of prior restraint or vagueness. An instructive in Austin is footnote three, in which the court said, we need to look at what this law actually does. In this case, the law defines advertising device in a very different way than Austin would. Well, the statute, there's nothing about the content of the signage that triggers differential treatment here. In other words, it can be a paid-for and an uncompensated sign that can have the same message on them, and that doesn't trigger any type of distinction. So why isn't, at least from that perspective, the statute content-neutral? Because it doesn't matter what the content of the message is on the sign. Well, I think a couple of things. One is that the definition of advertising device itself doesn't talk about paid-for content. It says that an advertising device is a sign for which compensation is given or received in exchange for the erection or existence of the sign. Now, plaintiffs alleged in their complaint that one would be hard-pressed to figure out any sign that wouldn't come under that definition, as contractors get paid for erecting signs all the time. Now here, CDOT has announced to the public during rulemaking, and this is also alleged in the complaint, that CDOT doesn't believe a payment to a contractor is payment for erection of the sign, even though on the face of it, that's what those words mean. Well, counsel, don't you make that argument in the context of your vagueness claim, the contractor argument? Yes, Your Honor. I think you were asked about your argument that we don't have a content-neutral act or rule here, and the compensated versus non-compensated doesn't seem to be a content distinction. Why do you think it is? Two reasons, Your Honor. First is that because CDOT interprets this to be compensation for content, compensation for content is a different creature than compensation not for content. Where is the content distinction? Why isn't that content neutral? You haven't explained why a certain type of content is being treated differently from another type of content. The content for compensation is things like political content is often given for compensation, displayed for compensation. But it doesn't have to be. It doesn't have to be. So where is the content distinction? But in this case, if a CDOT enforcement official is driving down the street and they see a Michael Bennett is good or Michael Bennett is bad billboard, that CDOT enforcement official, if he disagrees with that message, could say, my understanding is these billboards are usually paid for. And so then he could enforce the law, and in that enforcement, the threat of enforcement itself, in this case, is subpoenaing books and records, private proprietary information, contracts, accounting records, et cetera. It's a very invasive search, and at the end of that, the agency can ask for an affidavit that says But that's a different problem than the content neutrality question. You know, this enforcement specter, I get that, but I don't think that responds to Judge Matheson's question about, you can have a Michael Bennett is good sign off premises, and you can have a Michael, you know, you can have a supporter, Senator Bennett, put up a billboard in support of that. Same message. And they're treated differently. One's licensed and one's not, but it's not because of the Bennett message. It's because of really the fact of compensation, which brings me back to city of Austin, which, you know, had kind of a similar dichotomy between types of speakers. So in Austin, the court held that on-premise speech and off-premise speech, the need to read the sign to determine whether it's on-premise or off-premise is not at issue. That facially, that's content neutral. We're not going after anything in particular. Here, we don't even know if it's content for compensation. CDOT represents that. It's not in the definition. But a content neutral law classically addresses the time, place, and manner of the restricted speech. Compensation for erection or existence of the sign is neither time, place, nor manner. It has nothing to do with it at all. But even if this court should decide that this law is content neutral, a content neutral law can't sweep in substantially more speech than is necessary to advance the government's objectives. Can we apply intermediate scrutiny, commercial speech scrutiny, if that's our conclusion? Well, I'm not sure whether this is a commercial speech case. If it is, it clearly fails under APTIV, because APTIV requires proof and doesn't allow reliance on precedent from other places in order to establish that a law survives intermediate commercial scrutiny under Central Hudson. But if APTIV doesn't apply to this case, Ward v. Rock v. Racism would suggest that a law that sweeps in substantially more speech than necessary to accomplish the government's means is unconstitutional under intermediate scrutiny. In this case, the very definition of advertising device is every sign. I mean, directly or indirectly receiving compensation for the erection or existence of a sign means that if I buy a hammer at Home Depot to fabricate something, I have indirectly compensated Home Depot for the erection or existence of the sign that I have fabricated. This law goes so far in terms of giving discretion to CDOT officials that it's actually worse than the law that we had originally challenged when we came forward with our complaint. With respect to that, this law is an unconstitutional prior restraint. Are there regulations defining compensation? Yes, Your Honor. Compensation is defined. And they would include compensating Home Depot for selling the hammer? I think it's indirect compensation would count Home Depot, but the definition of compensation includes personal favor in the case of this particular law. So compensation is defined in CRS 43-1402, I believe, and it fits into the definition of advertising device. This definition is so broad that it sweeps in any sign. And CDOT says that this law is about compensation for content, yet nowhere in the law does it say that. And that's why Jared Esquibel, who is a high-ranking CDOT official, way up the food chain with respect to management of the outdoor advertising program, when confronted with the definition itself, said, I would say this definition is vague. Now, if street media said the definition is vague, that would be a conclusory legal allegation. If Jared Esquibel, who is responsible for the outdoor advertising program, says, I would say this definition is vague, and mine report that that definition is the operative definition upon which this law turns.  If it doesn't have a permit, CDOT can enforce, which can include forfeiture and fines. And if it's not an advertising device, CDOT doesn't enforce and doesn't require a permit. Jared Esquibel says, I would say this law is vague. Only with respect to the definition of compensation. That's what he was referring to.  In what respect? But it was based on vagueness in the meaning of the term compensation. Is there something else that's vague that he was pointing to? So, Your Honor, the deposition, I'm not sure is of record. Rule 12b-6 addresses the sufficiency of the complaint. The way the deposition went, Mr. Esquibel was presented with the definition of advertising device and asked to read it. And then when he read it, he said, I would say this definition is vague. He was looking at the statute, not the regulation. The definition is the same in the statute and the regulations. So he was looking at the time at the statute. And that was the definition of advertising device. And the predicate for that was the question of whether the definition of advertising device meant that CDOT was regulating content for compensation. And he thought they were. And then he decided, wow, I would say the definition is vague. And the reason, Your Honor, is because it doesn't say that. And the problem that creates with respect to prior restraint, which is well alleged in the complaint. Counsel, could you just explain your understanding of this phrase? Because you have it in your briefing too. Compensation for content. Could you explain what your understanding of that is? Yes, Your Honor. In the response brief, CDOT alleges that this law is modeled after Kentucky, Tennessee, and Ohio. And their definitions of advertising device say a sign for which compensation is paid to the sign owner for the display of content. That's compensation for content. A sign for which compensation is exchanged directly or indirectly for the erection or existence of the sign is not compensation for content. And in fact, we have an allegation, I believe it is, yes, 89 to 92 and 162. In allegation 162, there's an exchange with Mr. Neal Lacey, who is two levels up from the day to day. Well, I'm still having a little trouble with this. So I take it then there could be signs that don't have content. And therefore, wouldn't all the signs have some kind of content on them? Yes, Your Honor. All signs would have some kind of content. So maybe I'm back to your content neutral versus not content neutral. Am I in the right part of your argument right now? I'm sorry. May it please the Court, whatever part of the argument this is. Okay. Does this compensation for content go to your content neutrality argument? It goes to all the arguments, Your Honor. Well, how does it go to the content neutrality argument? In terms of the way this law is written, Austin footnote 3 says the court looks to what the law does. And in fact, Austin said that it was a commercial speech regulation. The court disagreed with that characterization, which in that case ironically saved Austin. In this case, what the law does, what it says, is not what the agency that's in charge with administering it says it says. And because it sweeps in so much content, it goes well beyond what is necessary to advance the governmental interest. So under the traditional content neutrality analysis in Ward v. Rocket v. Racism, it fails the prong of narrow-tailored because it takes in, and as the Ward court put it, substantially more content than is necessary to advance the objective. We're speaking on that. Are you seeking a remand for proceedings to determine that? We're just at the complaint stage. Yes, Your Honor. Rule 12b-6 says that the plaintiff must plead a plausible claim with a short statement that shows that the plaintiff is entitled to relief. Even if we adopt content neutrality under various Supreme Court precedent on intermediate scrutiny, you're saying it would need to be remanded to determine whether it's narrowly tailored, etc.? Yes, Your Honor. And that addresses the vagueness issue also, does it not? It does, Your Honor. Vagueness is not something distinct from that type of analysis, is it? It is not. All of them are fact-based analyses that require facts to be presented. The allegations in the complaint were well pled. The complaint meets the Iqbal standard, the Iqbal-Twombly standard for pleading, and the district court should look at the facts. No facts have been presented yet. We appreciate the court's time. We ask for a reversal of remand. Before you sit down, your client, it's fair to say it's in the billboard business. Is that too much of a generalization? Our client is in what the industry calls the out-of-home advertising business. Signage is part of it. Bus benches is part of it. Kiosks on plazas and so forth is also part of it. Just going to the vagueness issue, there's no doubt that your client is covered by this statute and the regulation. It's not vague as to you, but you're making a facial challenge here that it would be basically vague in any permutation. Your Honor, our client is also a signed contractor, and CDOT has said that compensation to a signed contractor doesn't count in terms of qualifying a sign as an advertising device, even though the law itself says compensation for the erection or existence of the sign. Operating as a signed contractor, our client won't know in any given circumstance whether it needs to get a permit from CDOT in order to erect a sign on someone else's behalf. That fits into the vagueness analysis. Thank you. Thank you, Your Honor. Mr. Nelson?  Good morning, and may it please the Court. My name is Pavan Nelson, and I represent Executive Director Liu and Deputy Executive Director Stockinger. Billboards, like other signs, take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation. For decades, courts have recognized these very real harms, and upheld billboard regulations designed to address them. And as the Court noted just earlier this year, in the city of Boston case, the United States Supreme Court reaffirmed a nearly 50-year unbroken tradition of billboard regulation in this country. Colorado's Outdoor Advertising Act and rules places content-neutral time, place, and manner restrictions on billboards adjacent to the state's highways consistent with precedent. Under Rule 8, street media had the obligation of setting forth a plausible claim for relief. But by examining street media's allegations, in light of precedent, and what the Act and the rules actually say, it's clear that the District Court correctly concluded that their claims lacked plausibility. The District Court should be affirmed. Let's give you content neutrality. Then we go to intermediate scrutiny, is that correct? Yes, Your Honor. And haven't the courts been pretty clear that that requires factual development and not a decision on the complaint? Shouldn't this be remanded to see if it's overbroad, if it's significantly broader than necessary to achieve its purpose and things like that? That's not saying you've lost. That's just standard practice in these cases. Am I wrong about that? I would disagree, Your Honor. So I think the cases you're referring to, they note that, you know, the regulations need to be supported, right? And they can be supported by history, common sense, or consensus. And what we have in this case is we have precedent from the United States Supreme Court establishing… Well, are you talking about the Austin case? I'm talking about… Because Austin was sent back, was it not? I'm talking about Metro Media, Your Honor. The Metro Media case, and then this court's decision in national advertising. Was Metro Media's decision on the pleadings? It was summary judgment, I believe, Your Honor. Well, that's a big difference. That's a big difference. And I don't know how this should come out, but I'm a little concerned about resolving this at the pleading stage. Can you… Do you have cases where intermediate scrutiny has been resolved at the pleading stage? Well, I cited the VDARE case, Your Honor, in the brief. In that case, it wasn't, you know, a signed case, but it was a First Amendment case that was resolved on the pleadings because the court actually looked at the allegations and determined that it needed to satisfy the formerly Iqbal standard. And I guess the point I'm making here is Metro Media and the national advertising case essentially established what needs to be considered in the narrow terror analysis. In both those cases, the courts determined that the harms caused by billboards are real and not speculative. And then they determined that a complete ban would directly advance the stated goals. And so… But this is a distinction that's never been litigated before, has it? Compensation, distinguishing between compensated, whatever that may turn out to mean, not compensated. So it's not like you can point to a history of this type of regulation being upheld by the courts. But… So I would think any court would want to pursue this and see what develops. But what I can point to, Your Honor, is Street Media's own allegations. So they have alleged that the compensation distinction in the current act is a direct proxy for the off-premise distinction in the prior act. They have alleged that the current act imposes permit restrictions in the same manner as the prior act, which is based on the off-premise distinction. They have alleged that the current act regulates the same signs in the same way as the prior act. Go ahead. And they have also alleged that the current act is content-based because it merely carries forward the program under the prior act. I'm comfortable you've disposed of that issue. But if you're saying they're arguing that this is essentially the same as an off-premises regulation, then look to what the Supreme Court did in Austin. And it didn't say the Austin ordinance, I guess it was a city ordinance, is constitutional. They sent it back down to examine how it survives intermediate, whether it survives intermediate scrutiny. So if you're going to equate this with the Austin situation, then I think the Supreme Court tells us they've said enough that you need to develop a record. Well, I think the difference in the city of Austin case, Your Honor, is, based upon my reading of the pleadings, is during, in the Supreme Court phase, the parties raised new arguments that hadn't been considered before in the district court and in the appeals court. And I listened to the oral argument in the Fifth Circuit after it had been remanded. And that was a major focus. Well, what about this digitization issue that wasn't addressed below? So I think that's what the Supreme Court was getting at. But, you know, in this case, based upon the allegations that street media has made in this case, you have to consider Metro Media's effect. And in Metro Media, the Supreme Court, and in the national advertising case, this court held that a complete ban on off-premise signs directly advanced the stated goals of the act. The current act and rules are not a complete ban. The current act and rules... Does that help or hurt? I think that helps, Your Honor, because it would be bizarre... Where the line is drawn may not be a reasonable way to draw the line. And so the fact that a complete ban is constitutional doesn't necessarily mean that you can make distinctions if the distinctions don't have a sufficient support for them. Well, I think it would result in a bizarre result, Your Honor, to say that a complete ban on a medium satisfies the First Amendment, but not a complete ban on a medium. Actually allowing these signs would somehow violate the First Amendment. But what if the ban said you can't have these signs in this particular neighborhood, and maybe it's a business area or something, and there's just no reasonable or sufficiently reasonable basis for singling out that neighborhood, which may be where, well, whoever, some particularly prominent person lives or something like that. And I think the fact that you can have a complete ban doesn't mean that a partial ban necessarily satisfies constitutional restrictions. I do think it would result in a bizarre result, Your Honor, where, you know, and maybe to answer your question, we could actually look at the actual Act in rules itself. So this actual Act, it says advertising devices are allowed. They just need to be in commercial and industrial zones, and they just need to comply with certain size, spacing, and lighting requirements. That's it. So it's not like an example that you put forth, Your Honor, where it's an arbitrary, you know, you can't go here or whatever. They're directly related to the safety and aesthetic goals that are asserted in the Act in rules. What about the complication component? Because they're complaining that that causes complications, and they turn out to be unreasonable, depending on how it's defined. I don't think that's the case, Your Honor. Explain that. So first of all, like I've mentioned, they've alleged that this is a direct proxy for the off-premise distinction, which was present in the prior Act. And given the realities of this industry, this is not a complicated metaphysical question. As street media alleged in their complaint, billboard companies like street media enter into lease agreements with property owners in order to erect their sites. Each of the five permit applications that street media submitted in this case that they're mentioning in their legal complaint, they submitted along with those applications the lease agreements that showed that street media was paying money to the property owner in exchange for the right to erect their sites. So given the realities of their permit applications and the way this industry operates, there's not really any ambiguity here. By engaging in that business transaction, that is compensation that satisfies the advertising device requirement. If I'm a restaurant or business and I want to put up a political sign in my window so I go out and have one of those created, I pay for it, would that sign be regulated under the Act? My business, my restaurant, my political sign. Is that covered? No. So if you don't get compensated for putting up that sign, it's not regulated. And in addition to just the compensation requirement, the acting rules, CDOT is not regulating every sign in the state of Colorado. It's regulating signs 660 feet from the right-of-way. Would political or yard signs put on a right-of-way be covered? Well, first of all, they can't put them on a right-of-way without our permission. But if it was within 660 feet of the right-of-way, if they weren't getting any compensation for it, there would be no regulation of that sign under the current. Could I just, on intermediate scrutiny. So in your brief, starting on page 27, you say that the narrow tailoring requirement is met under intermediate scrutiny. And then it goes on, you cite Metro Media, and then you also draw from the face of the statute and rules themselves. And that's it. Is that enough on a Rule 12b-6 to, I mean, don't you have the burden of showing that a content-neutral regulation is narrowly tailored, and is that enough to do it? And what is your best authority that that's happened in other cases? So, Your Honor, at this stage, it's 12b-6, motion to dismiss. Under Iqbal and Twombly, the plaintiff is supposed to put forth a plausible claim for relief. That's their burden at this stage. And when courts analyze whether or not a claim is plausible, they have to look at precedent in the area to determine whether or not it satisfies or states a plausible claim for relief. And so by making these allegations, street media directly put Metro Media case and this court's decision in national advertising directly at issue. So in order for this court to determine whether or not those claims are plausible, you need to look at Metro Media and you need to look at national advertising. And, you know, like I mentioned to Judge Hartz, you know, in the Bader case, which I referenced in the complaint in my brief, that is an example of this court looking at Twombly and Iqbal in a First Amendment context and determining, hey, wait a minute, we don't think this is a plausible claim based upon the law in this area. So, you know, we're going to have to sort of dismiss this case. Do you read the appellant's brief as advancing an intermediate scrutiny argument? I do not, Your Honors. And they didn't really advance, make an intermediate scrutiny argument in their complaint either. The way that I understood their complaint is we believe the off-premise distinction is a content-based distinction. And so based upon, you know, the Sixth Circuit and the Fifth Circuit's decisions, the Outdoor Advertising Act is also content-based. And that was flatly rejected in the city of Boston case. And so I don't see anything in their complaint that asserts that this would satisfy intermediate scrutiny or this would violate intermediate scrutiny. Is that not equivalent to a claim that this is an unlawful prior restraint? Isn't the reason for intermediate scrutiny to determine whether this content-neutral law constitutes an improper prior restraint? Is there a difference when they argue vagueness and prior restraint? Is that different from arguing intermediate scrutiny? Well, I think so. When you talk about vagueness, vagueness sounds in due process. And I think that the precedent is clear that a content-neutral time, place, and manner permitting scheme is not an unconstitutional prior restraint, as long as there are definite time periods and a way to cabin discretion. And I think all of that is present here just on the face of the law. The revisions that were made to the Outdoor Advertising Act set a definite time period, a 30-day time period, to make permitting decisions. And as the district court noted, there's ample due process protections to make sure that the officials aren't sort of going amok. I see my time has expired. Yeah, can you explain the tourist sign exception? How does that work? The tourist sign exception? Yeah, well, okay. The regulation has an exception for certain tourist-related signage. I'm not quite sure exactly what that means. That's the basis of my question. There's an exception for public service signs, whatever that is. I think there's an exception for historic signs, whatever that is. But don't the regulations really carve out different kinds of messages for different treatment? And why wouldn't that draw us back into a content-based problem here? Doesn't that torpedo the content neutrality argument? I don't believe so, Your Honor. I'm not totally familiar with the tourist exception, I'll be completely honest. 8.0 over your regulations. Go ahead. But I don't believe so. Because, again, what street media is talking about is their own billboard advertising, which they erect these very large digital signs next to highways. And, again, the regulations with regard to street media don't make any distinction with regard to content at all. Content is irrelevant to whether or not any restrictions are actually placed on the sign. So, again, if you actually look at the Act and the rules themselves, they don't place regulations based upon content in any way. It's agnostic to content, especially as it relates to what street media is alleging. So I don't believe that that undercuts the contract neutrality argument, Your Honor. Thank you, Counsel. Your time is expired. Thank you. Mr. Messenger, I'm going to give you 30 seconds, but I'm going to stop you right at 30 seconds so you can address whether you raised an intermediate scrutiny issue in your complaint. May it please the Court. Thank you for the additional time, Your Honor. Allegation 45 states that the implication of the plain language of the definition stating, on the face of it, all signs are advertising devices. One would be hard-pressed to take a definition of advertising device that includes all signs for which compensation is directly or indirectly given or received in exchange for the erection or existence of the sign as something that doesn't cover all signs. Time up. Thank you. Thank you, Counsel.